# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| CONSTANCE F. BOCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:08-CV-22 PPS |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Constance Bock appeals the Social Security Administration's ("SSA") decision to deny her application for disability insurance benefits. An administrative law judge found that Bock was not disabled within the meaning of the Social Security Act, because she could perform a significant number of jobs in the national economy. The ALJ supported his conclusions with substantial evidence in the record. But in making this decision, the ALJ ignored medical evidence in the record that supported Bock's claim. So while Bock may in fact not be disabled, a remand is in order to allow the ALJ to better explain why that may be the case.

## I. BACKGROUND

Bock is a 51 year-old woman who has primarily worked in manually intensive jobs such as assembly lines, machine operation and as a deli worker in a grocery store. (R. 111, 114.) In 1996, a doctor at the Indiana Hand Center recommended that Bock change jobs because she had developed tennis elbow and carpal tunnel syndrome. (R. 173.) Over the next few years, Bock's medical condition worsened, so in October 2004 she filed a claim for disability insurance benefits alleging that she has been disabled and unable to work as of January 1, 2001, due to

arthritis, nerves, diabetes, high blood pressure, cholesterol, depression, carpal tunnel syndrome, tennis elbow, hernia, and gall bladder problems. (R. 12, 80.) By the time Bock filed her claim, she had only acquired enough disability insurance to be covered through March 31, 2006. (R. 12.) Therefore, her medical condition between the alleged onset date (January 1, 2001) and her coverage expiration date (March 31, 2006) is relevant to her application for insurance benefits. (*Id.*)

Bock challenges the ALJ's assessment of the medical evidence in this case. Therefore, some background of her medical history is helpful. In May 2001, Bock's primary care physician, Dr. Lance Burton, diagnosed Bock with fibromyalgia and arthritis in her shoulder. (R. 314.) Dr. Burton referred Bock to a specialist and, by September 2001, Bock reported that her shoulder pain was improving and that medication was helping her. (R. 317-19.) Over the next couple of years, Bock continued to complain of shoulder pain. In April 2003, Dr. Burton diagnosed Bock with rotator cuff tendinitis. (R. 335.)

After Bock filed her application for disability insurance benefits in October 2004, the SSA referred her to several medical professionals for examination of her disability claims. In November 2004, Dr. H.M. Bacchus, an agency-referred physician, diagnosed Bock with generalized arthritis, chronic lower back pain, right-sided sciatica, and anxiety with a history of panic attacks. (R. 302-04.) Dr. Bacchus concluded that Bock appeared to retain the functional capacity to perform light duty work, requiring no more than five hours standing and three hours continuous sitting, and maximum lifting of 15 pounds. (R. 304.) He otherwise found her senses to be intact. (*Id.*) In addition, agency psychologists reviewed Bock's records and concluded that, despite some moderate concentration and memory limitations, Bock could perform simple

repetitive tasks on a sustained basis. (R. 307-10, 394-95.)

In January 2005, Bock sought treatment at the Northeastern Center for depression and dependant personality disorder. (R. 357.) In her self-assessment, Bock checked off that she had many panic attacks. (R. 360.) Around that time, Bock also consulted with a rheumatologist, who identified mild bony osteoarthritic enlargements in her finger joints. (R. 374.) In April 2005, Dr. Samir Ishak, a Northeastern Center psychiatrist, diagnosed Bock with major recurrent depression, post-traumatic stress disorder, social phobia and panic attacks. (R. 418-19.)

Beginning in October 2006, Bock had three monthly physical exams with Dr. Bret Kueber. (R. 457, 459, 460.) In January 2007, Dr. Kueber completed a Physician's Statement of Ability to Do Work-Related Activities. (R. 446-51.) On that form, Dr. Kueber listed the following work limitations: occasional lifting less than ten pounds; less than two hours of standing or walking per day; periodic alternating between sitting and standing; no pushing or pulling; occasional reaching, handling, fingering and feeling; limited exposure to temperature extremes, humidity, machine hazards and pulmonary irritants. (*Id.*) Dr. Kueber further stated that Bock was limited by her fibromyalgia, arthritis and panic attacks and that her condition required her to be absent from work more than three times a month. (R. 448, 450-51.)

Bock presented her claim at an administrative hearing before ALJ Bryan Bernstein on April 26, 2007. (R. 462-99.) At the hearing, Bock testified that she stopped working because she had panic attacks. (R. 476.) According to Bock, whenever she was in a room full of people, she would get very nervous and have trouble functioning. (R. 476-77.) The panic attacks would make her sweat and shake all over. (R. 491.) Bock also stated that she was prevented from working by her fibromyalgia, nerves, depression, osteoarthritis, fatigue from medication, sleep

3

apnea and blurred vision caused by her diabetes. (R. 480-87.) As for physical limitations, Bock testified that she had trouble sitting still. (R. 487-88.) On a good day, she could sit for 20-30 minutes maximum. (R. 488.) But she would have "bad days" at least four times a week, in which she would have more trouble sitting still. (*Id.*) Bad weather would amplify her troubles and, on the day of the hearing, it was raining and she was experiencing aches and pains. (*Id.*) Bock further stated that she couldn't stand for more than 15 minutes at a time, had trouble walking, and couldn't lift more than ten pounds. (R. 488-89.)

Christopher Young, a vocational expert ("VE") also testified at the hearing. (R. 492-99.) As is customary in these hearings, the ALJ asked the VE to consider several hypothetical work limitations that he believed the claimant to possess and determine what jobs would be available for someone with those restrictions. In this case, the ALJ asked the VE to consider the following work restrictions:

(1) no work that imposes close regimentation or close supervision that would cause distress, such as for work requiring a certain level of production pace or quality;

(2) work that allows some independence and flexibility to catch up with ordinary productivity;

(3) no work that imposes intense contact with the public or strangers;

(4) work that would allow for both sitting and standing and would not require standing or walking for more than six hours a day;

(5) no work requiring more than occasional stooping, kneeling and bending;

(6) no work demanding constant manipulation, picking, pushing or pulling with hands or fingers;

4

(7) no work with exposure to concentrations of dust, smoke, chemical fumes, or extreme temperature or humidity;

(8) no work demanding significant language processing challenges or complex instructions; and

(9) no work requiring lifting more than 20 pounds occasionally and 10 pounds frequently. (R. 493-94.)

The VE testified that someone with these limitations could not perform Bock's past jobs because Bock's previous work was fairly regimented and required a certain pace of production. (R. 495.) But someone with those limitations could perform certain light unskilled jobs such as a mail sorter, sales attendant or office helper. (*Id.*) Bock's attorney posed two additional limitations based on Dr. Kueber's medical report: no more than occasional reaching, handling, fingering and feeling; and an accommodation of more than three absences from work per month. (R. 498.) The VE testified that someone with these additional limitations would be unable to work. (R. 498.)

Based on the record evidence and testimony, the ALJ issued an opinion determining that Stephenson was not disabled within the meaning of the Social Security Act. (R.12-23.) The ALJ followed the familiar five-step sequential inquiry prescribed by the SSA's regulation to determine whether an applicant is disabled: (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy. 20 C.F.R. §

404.1520; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

In this case, the ALJ found that Bock's testimony about the extent of her ailments was unreliable. (R.16.) Instead, he concluded that Bock's work restrictions were consistent with the hypothetical limitations he posed to the VE. (R. 18-19.) He therefore concluded at Step Five that Bock could perform the three types of jobs that the VE testified could be performed under those limitations. (R. 22-23.) The ALJ's decision was affirmed on administrative appeal, and this appeal followed. (R. 4-6.)

## II. DISCUSSION

Bock makes three arguments on appeal: first, that the ALJ failed to consider medical evidence favorable to her claims, particularly Dr. Kueber's opinions; second, that the ALJ made improper medical determinations; and third, that the ALJ improperly discredited her testimony at the hearing.

My review of an ALJ's decision to deny social security benefits is limited to determining whether the decision is supported by substantial evidence. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Id.* In other words, the SSA's decision, if supported by substantial evidence and reached under the correct legal standard, shall be upheld even if reasonable minds could differ as to the appropriate conclusion. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). It is not my job to re-weigh evidence, choose among conflicting versions of events, decide questions of credibility, or substitute my own judgment for the ALJ's. *Young*, 362 F.3d at 1001.

All three issues on appeal relate to the ALJ's determination of Bock's residual functional

capacity ("RFC"). A claimant's RFC is a measure of her abilities to work despite her impairments. 20 C.F.R. § 404.1545. The ALJ is required to determine an applicant's RFC in order to evaluate whether she can perform her past jobs or other jobs in the national economy. *Id.* An RFC is not a medical opinion, but rather an administrative finding based on the ALJ's evaluation of the record, including all relevant medical and non-medical evidence and the claimant's own statement of what he is able or unable to do. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). When weighing medical opinions, the ALJ must consider, among other things, the examining relationship, treatment relationship, supportability of the opinion, and consistency with the record. 20 C.F.R. § 404.1527.

Bock first argues that the ALJ determined her RFC without considering Dr. Kueber's assessment of her work limitations. In January 2007, Dr. Kueber completed an RFC assessment form for Bock that listed much greater work restrictions than the RFC adopted by the ALJ. (R. 446-51.) At the administrative hearing, the VE testified that if Dr. Kueber's prescribed limitations were applied, there would be no jobs available to Bock, and hence she would be disabled. (R. 498.) There is no mention of Dr. Kueber's report or his medical opinions in the ALJ's RFC assessment. (R. 18-22.) While an ALJ is not required to discuss every piece of evidence in the record, "he must confront evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Moreover, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling 96-8p. Dr. Kueber's RFC assessment paints Bock's medical condition as much more severe than what the ALJ believed

7

her limitations to be. Therefore, the ALJ's failure to address Dr. Kueber's conflicting medical opinions violates Social Security Ruling 96-8p. *See* 20 C.F.R. § 402.35(b)(1) (stating that social security rulings are binding on the SSA).

The Government counters that Dr. Kueber completed his RFC assessment in January 2007, over nine months after Bock's disability insurance coverage expired, and therefore Dr. Kueber's opinions have no bearing on Bock's condition prior to the expiration of her insured status. This is a fine argument, and if the ALJ had relied on it, then he would have fulfilled his obligation to explain his reasons for rejecting medical evidence in Bock's favor. But the ALJ didn't make this or any other argument for why Dr. Kueber's opinions should be discounted. In fact, he didn't mention Dr. Kueber's opinions at all. Bock offered Dr. Kueber's medical reports to prove that her condition was actually more severe than what the agency-referred physicians had concluded. As Bock's treating physician, Dr. Kueber's medical opinions were entitled to greater weight than other medical evidence. 20 C.F.R. § 404.1527. Even though there may have been good reasons for disagreeing with Dr. Kueber's opinions, the regulations required the ALJ to provide these reasons in his opinion. *See id.* The ALJ's failure to provide any rationale for disregarding Dr. Kueber's opinions is reversible error.

Bock further insists that the ALJ failed to adequately consider several of Bock's physical impairments including her shoulder problems, osteoarthritis, panic attacks and fatigue caused by diabetes and sleep apnea. On the contrary, the ALJ's RFC determination reflects consideration of all of these impairments. For example, the ALJ credited Bock with lifting, reaching and hand manipulation restrictions to accommodate her shoulder pain and osteoarthritis. He also found that Bock could not work in closely regimented jobs to account for her panic attacks and fatigue.

8

Although the ALJ did not list every piece of medical evidence relating to each of these impairments, he was not required to. *Indoranto*, 374 F.3d at 474. The ALJ stated that he considered all of these impairments and demonstrated that he had. As already explained, the ALJ came up short in failing to consider Dr. Kueber's opinions. But aside from that error, the ALJ supported his RFC determination with substantial evidence from the record.

Bock's next argues that the ALJ erred in assessing her RFC because of a negative credibility finding. To determine a claimant's credibility, "an ALJ must consider several factors including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). "The finding must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). Since ALJs are in the best position to evaluate credibility, I will defer to the ALJ's credibility determination and overturn it only if it is patently wrong, unreasonable or unsupported. *Getch v. Astrue*, 539 F.3d 473, 478 (7th Cir. 2008).

Many of the ALJ's reasons for impugning Bock's credibility are hard follow. First, the ALJ stated that Bock "has constructed a system for herself for explaining her failure to find work she is *comfortable* doing. For these reasons, when the foundations of her system are challenged, her answers are contrived to support her system, rather than the truth." (R. 17-18) (emphasis in original). It's not entirely clear to me what this statement means and why the ALJ thinks that Bock has manufactured a "system" for lying about her ability to perform certain jobs. Second, the ALJ commented that Bock "alleges she has rheumatoid arthritis, but rheumatoid factor and ANA tests were all negative and Dr. Kenneth Smith determined that she has no inflammatory

9

disease, just mild osteoarthritis." (R. 18.) But this is a straw man because Bock never claimed she had *rheumatoid* arthritis, only that she had arthritis generally. So the ALJ was impugning Bock's credibility based on a claim that she never made. Third, the ALJ determined that Bock did not exhibit the factors for Chronic Fatigue Syndrome ("CFS") outlined in Social Security Ruling 99-2p. (R. 18.) But Bock never claimed to have CFS. She only complained of sleepiness and fatigue caused by her medication.

The ALJ clearly believes that Bock is gilding the lily regarding the severity of her ailments, and she may well be. Indeed the ALJ did give some good examples to support his position. Unfortunately, he also gave examples that were either unsupported by the record or were based on a faulty premise. The ALJ himself noted that credibility determinations are particularly important in cases like this, where psychological and subjective pain complaints are heavily at issue. (R. 17.) Since I am remanding this case as described above so that the ALJ can evaluate the evidence from Dr. Kueber, the ALJ should also seek to clarify the shortcomings in his credibility findings described above.

Finally, Bock argues that the ALJ made improper medical determinations that he was unqualified to make. First, Bock takes issue with the fact that the ALJ only accommodated her panic attacks by determining in her RFC that she should avoid intense public contact and closely regimented jobs. Bock feels that the ALJ underestimated the severity of her panic attacks and was attempting to make a medical determination that these work restrictions would alleviate her panic attacks. Bock's argument misses the point. As stated earlier, RFCs are not medical opinions, but rather an ALJ's administrative finding as to a claimant's proven work limitations. *Diaz*, 55 F.3d at 306 n.2. In other words, the ALJ was not engaging in a medical opinion about

10

what limitations would alleviate panic attacks; he was merely a factual finding regarding the extent of her capacity to work, based on the evidence presented to him, which was his job to do.

Second, the ALJ commented that Bock's "mental acuity is sharper when she does not feel that she is being personally challenged by questioning, that is, she is able volunteer information and data at the hearing which she seemed unable to recall when directly asked for it." (R. 19.) Bock complains that this was an improper attempt to make a medical analysis of her cognitive functioning. Again, Bock miscasts a factual observation as a medical opinion. The ALJ was simply making an observation that Bock appeared to have a harder time recalling things when she was challenged with questions. I am not persuaded that the ALJ was trying to dabble in armchair psychology.

### III. CONCLUSION

For the reasons stated above, this cause is **REMANDED** for further proceedings consistent with this order.

**SO ORDERED**.

ENTERED: August 18, 2009.

                                          s/ Philip P. Simon
                                         PHILIP P. SIMON, JUDGE
                                         UNITED STATES DISTRICT COURT